# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

**WILLIAM J. DAUGHERTY**                                       **PLAINTIFF**

**v.**                                       **CIVIL ACTION NO. 5:17-CV-P141-TBR**

**WARDEN RANDY WHITE**                                    **DEFENDANT**

## MEMORANDUM OPINION

This is a civil rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff William J. Daugherty leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the action will be dismissed.

## I. SUMMARY OF COMPLAINT

Plaintiff brings this action against Kentucky State Penitentiary (KSP) Warden Randy White in his individual capacity.

In his complaint, Plaintiff states as follows:

> Cruel and Unusual Punishment . . . On 6/28/2017, three dorms was let out at the same time, and everyone was trying to get in the canteen line, and then out of nowhere corrections staff came upon us and started to push inmates around, they didn't ask anyone to move, they just push who ever was in there way at the that time, so the inmates started to push back, that is when the fight broke out on the institution yard, between inmate and correction staff. It was then that everyone was place on lock down, we were told by a cert team, that for the next 10 days, there will be no phone call, and not letters sent out to anyone, that is when everything became crazy on the institution we could not understand why so many were being punished for what so few done, then came the threats upon everyone, the cert team stood in my face and said he will beat my head in if he thought I was trying to remember who said what to me, then I was push into a wall and call a coward because I wouldn't jump on the cert team, like it was said, they done to corrections staff, I tried to explain to the cert team that I was not involved in the fight, I was told that before it was over, I was going to wish I had been involved, then we were told that every time a inmate jumps on correction staff, one hundred would pay for it with blood . . . then they started to degrade me and inmbarrased

me before Aramark staff which were women for reasons I still don't understand, and then the Senior Caption Will Thomas said this is not cruel and unusual punishment, it is called getting back at a lot of you inmates who thought you could jump on correction staff and get away with it, so understand what it feel like, all of you, and it don't matter if you were involved or not . . .

For everyone who believe they are being done wrong by the cert team that the warden brought on the institution, they need to stand up and say so. Everyone who spoke up, was place in segregation and beat up, and told that no one cares about what you inmates think, but all of you need to understand something right now, you all are being punishment for what took place on this institution, something in which you all started, so understand why we are here, we came to hurt you inmates, just like you thought you had done to correct staff, and it will not stop until the Warden no longer wants to see just how frightened you all became . . .

And for the first ten days of this lock down we were lock down for 24 hours, not letting us out for anything, Warden Randy White could have stop this, but chose to look over it, 63 days of lockdown for what some else done.

As relief, Plaintiff seeks compensatory damages.

## II. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

"Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. The Lockdown

Plaintiff's first allegation against Defendant White seems to be that he violated Plaintiff's rights by placing Plaintiff and other inmates at KSP on lockdown for 63 days for actions that Plaintiff allegedly did not commit. Plaintiff also states that, for the first 10 days of the lockdown, inmates were not allowed to leave their cells, make phone calls, or mail letters. The Court finds that these allegations fail to state a constitutional claim against Defendant White.

The Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Generally, courts consider the nature *and* duration of a stay in segregation in determining whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008).

Here, the Court finds that Plaintiff's allegation of a 63-day lockdown fails to meet this standard. First, Plaintiff has not alleged the duration of his sentence was affected by the

4

lockdown. Moreover, in *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for a relatively limited period of time does not require the protections of due process. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant); *Rimmer-Bey*, 62 F.3d at 790-91. *See also Walton v. Sing*, No. CIV S-10-3167 JAM GGH P, 2011 U.S. Dist. LEXIS 119798, at *11(E.D. Cal. Oct. 17, 2011) (holding that a prisoner who alleged that he was subjected to a prison lockdown for thirty days after a prison riot failed to demonstrate an atypical and significant hardship under *Sandin*) (citing *Wade v. Maddock*, No. 99-15565, 2000 U.S. App. LEXIS 16030, at *3 (9th Cir. July 7, 2000) ("[W]e do not believe that the two-month lockdown can, as a matter of law, constitute a protected liberty interest under *Sandin* . . . .").

Moreover, Plaintiff's allegations that he was not allowed to use the telephone or send mail during the first 10 days of the lockdown do not change this analysis. *See, e.g.*, *Boriboune v. Litscher*, 91 F. App'x 498, 500 (7th Cir. 2003) (short-term loss of telephone privileges and disciplinary segregation implicated no liberty interest and triggered no due process protection); *Blum v. Fed. Bureau of Prisons*, No. 98-1055, 1999 U.S. App. LEXIS 20051, at *8-9 (10th Cir. Aug. 23, 1999) (protected liberty interest not triggered by restrictions on store privileges, telephone calls, and access to a radio during disciplinary segregation); *Larue v. Blodgett*, No. 95-35936, 1996 U.S. App. LEXIS 11739, at *3-4 (9th Cir. May 6, 1996) (temporary loss of telephone privileges, possession of a radio, and visitation did not meet *Sandin* requirements); *Kennedy v. Blankenship*, 100 F.3d 640, 642-43, n.2 (8th Cir. 1996) (temporary restriction of mail, telephone, visitation, commissary, and personal-possession privileges was not a

5

constitutional violation); *Allen v. Alexsander*, No. 2:16-cv-245, 2017 U.S. Dist. LEXIS 106698, at *12 (W.D. Mich. July 11, 2017) (90-day phone restriction does not violate right to procedural due process).

Therefore, Plaintiff's claims against Defendant White related to the lockdown at KSP must be dismissed for failure to state a claim.

### B. Actions by Members of the "Cert Team"

Plaintiff also appears to make claims against Defendant White liable for the alleged actions taken by members of the "cert team" against Plaintiff during the lockdown. The specific allegations that Plaintiff makes against members of the "cert team" regarding himself seem to be that they verbally harassed and threatened him and pushed him into a wall. The doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978), unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Put another way, a supervisor's failure to supervise, train or control an employee is not actionable under § 1983, unless the plaintiff shows "the official at least implicitly authorized, approved, or knowingly acquiesced in the *unconstitutional conduct* . . . ." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982) (emphasis added).

Here, Defendant White cannot be held liable for members of the "cert team" allegedly verbally harassing and threatening Plaintiff because these actions do not constitute unconstitutional conduct. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Clark v. Turner*, No. 96-3265,

6

1996 U.S. App. LEXIS 331113, at *4 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *George v. Ballard*, No. 5:16-482-KKC, 2017 U.S. Dist. LEXIS 2564, at *8 (E.D. Ky. Jan. 9, 2017) ("It has long been established that a prison guard's verbal abuse or general harassment of an inmate does not violate the Eighth Amendment."); *Searcy v. Gardner*, No. 3:07-0361, 2008 U.S. Dist. LEXIS 118217, at *10 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.").

The Court also finds that Plaintiff's claim against Defendant White based upon members of the "cert team" allegedly pushing him into a wall fails for the same reason. Under the Eighth Amendment, an official's conduct will be found to amount to cruel and unusual punishment "when their offending conduct reflects an unnecessary and wanton infliction of pain." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). In examining an excessive-force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring the court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted [is] sufficiently serious." *Cordell*, 759 F.3d at 580 (internal quotation marks and citations omitted). The inmate is not required to suffer a serious injury, but the extent of his injuries may be considered in determining whether the force used was wanton and unnecessary. *Wilkins v. Gaddy*, 559 U.S. 34, 38-40 (2010); *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Thus, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a

valid excessive force claim." *Tuttle v. Carroll Cty. Det. Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012) (citing *Wilkins*, 559 U.S. at 38).

Here, the Court finds that because Plaintiff's excessive-force claim is based on no more than an alleged shove into a wall, Plaintiff fails to meet the objective standard of an excessive-force claim. *See, e.g.*, *Tuttle v. Carroll Cty. Det. Ctr.*, 500 F. App'x at 482 (affirming that plaintiff's "bare-bones allegation that [a] female deputy "grabbed his privates and squeezed them really hard" was simply too subjective and vague to state an excessive-force claim); *Wicker v. Lawless*, No. 1:15-cv-00237, 2017 U.S. Dist. LEXIS 162076, at *42 (S.D. Ohio Sept. 30, 2017) (finding that an alleged "shove" that caused the plaintiff to "bump" her head - "causing no discernable harm of record – is insufficient harm under *Wilkins*"); *Cline v. Cruse*, No. 3:14 CV 1678, 2016 U.S. Dist. LEXIS 84357, at *9 (N.D. Ohio June 8, 2016) (holding that an officer's grabbing of the plaintiff's thumb, applying pressure to it, and bending in backward, which resulted only in "a small reddening of the skin" was not sufficiently serious to meet the objective prong of an excessive force claim).

Thus, because Plaintiff's allegations of a "shove" suggest no underlying constitutional violation, Plaintiff's claim against Defendant White for this alleged act must also be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss this action for failure to state a claim upon which relief may be granted. The Court will enter a separate order of dismissal.

Date:

cc: Plaintiff, *pro se*
 Defendant
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.011